Upon the last point, Murray v. Lackley, 6 N.C. 369, is a direct authority for the plaintiff. He was not only not rebound, and *Page 275 
thus stood discharged, according to that case, but it is clear, from the memorandum of the State's attorney on the docket, that the proceeding was intended and considered to be at an end.
Upon the question of probable cause, the evidence produces on the minds of the members of the Court the same impression that it did on that of his Honor in the Superior Court. As the case stands, it is to be admitted that the defendant and his son and son-in-law, and it may be others, believe that the hogs of the defendant had been stolen, and that those in the plaintiff's pen were the same, or some of them. But with that admission there was not sufficient evidence that the plaintiff probably stole them. The only circumstance against him is that hogs which the defendant thought to be his were in his possession. That is evidence, that may be very cogent, or the contrary, according to other circumstances. Where a theft is recent, the possession of the stolen goods, not accounted for, is strong evidence when, from the nature of the goods, it is probable if the party came honestly by them he could show it. But it is a sufficient answer to the suspicion arising from the possession if the party does not show that he got them by purchase or in any (395) other fair way. And even in such a case of recent theft, if the person upon whom the goods are found does not conceal them, but, as here, keeps them near his house, open to observation, and, upon their being challenged as another man's, tells at once how, when, and from whom he received them, and, at the instance of the claimant, produces the very persons from whom he said they came, and they confirm his representation in all its particulars and exonerate him from all charge, and make themselves responsible for his possession, no intelligent and impartial mind could harbor a suspicion that, however it might be with others, he had stolen the goods, though they were in his possession. If, indeed, this were a fair reason for thinking that the persons thus assuming the responsibility did so falsely in collusion with the possessor, for the mere purpose of screening him, that would make a difference. But such a supposition is not readily credited, and is not admissible but upon good proof; and in this case there was no request on the part of the defendant to leave an inquiry of that kind to the jury. In truth, however, the present case is far less strong than that supposed. The defendant's own evidence is that his hogs were turned into the range in the mountains fifteen or perhaps eighteen months before they were seen by the son-in-law at the plaintiff's, which was the distance of 10 miles from the defendant's, with two mountains between. From those facts simply and the identity of the marks of these hogs with that of the plaintiff it would be a rash presumption and harsh inference that the plaintiff had gone across the mountains and stolen those hogs — at all events, without asking him how he got them, and assuming everything in its worst form. *Page 276 
No jury would, we think, pronounce a man guilty under these circumstances. But there inquiries were made of the plaintiff, and he promptly gave answers and explanations which, if true, perfectly (396) exculpated him, and then he proceeded to make it appear that what he declared was true by producing two men who acknowledged that they had sold the hogs to him, with the marks they then had, and that, without altering the marks, he had kept them openly and had claimed them notoriously for a year or more. Surely, after that, every possible suspicion of theft by the plaintiff vanishes. It would be impossible for any man on whom a stolen article may at any distance of time be found to establish his innocence of the theft by proof of an honest purchase if the evidence here, if believed, were not convincing that the plaintiff was not guilty of either taking the hogs or of receiving them feloniously. Then let it be taken for granted that the defendant believed the hogs to be his; and still that will not affect the plaintiff's right to recover. The defendant must know that he, like other men, is liable to be mistaken, and also that others may have the same mark that he has; and upon the information he had, it was but a just and ordinary diffidence of his own infallibility to allow that he might be and was mistaken, and that these were not his hogs. But if he were ever so confident upon that point, yet he could not believe — at least, not rationally — that the plaintiff had stolen them, when others assured him that they had sold them to the plaintiff, and he had not only kept them exposed to the view of all comers, but when he actually took a member of the defendant's own family to look at the hogs, upon a proposal to sell them to him, marked as they were, and when, from that time to the end of the investigation, the plaintiff gave the same account of the manner of his coming by them, and was fully sustained therein by the persons referred to by him. It is true that one of those persons, William Rice, on being applied to by the defendant, at first said he did not mark the pigs he sold; but even then the said he did sell some pigs to Moore, among which were the two the plaintiff afterwards purchased, and that he should know them (397) if he could see them; Accordingly the defendant took the witness with him to examine them; and as soon as he saw them in the plaintiff's pen, he declared them to be the same which he had sold, when young, to Moore; and upon the circumstances under which he had marked his pigs being recalled to his mind by the plaintiff, in the presence of the defendant, he declared that he then remembered that also. All these statements came fully to the knowledge of the defendant before he began the prosecution, and it does not appear that he had the least reason to doubt, or disbelieve, that the plaintiff did purchase the hogs from Moore and Metcalf honestly and thinking that they had a right to them. If those witnesses were to be believed, the defendant had no *Page 277 
ground for a lingering suspicion of the plaintiff's integrity in the transaction, but was obliged then to think him, as the jury has since, upon the same evidence, found him to be, not guilty.
PER CURIAM. No error.
Cited: Hatch v. Cohen, 84 N.C. 683; Brinkley v. Knight, 163 N.C. 195.
(398)